OPINION OF THE COURT
Peter Tom, J.
In these motions, the sponsor of a residential cooperative *1065 and tenant-shareholders seek, inter alla, the court’s determination as to which party has the controlling number of directors of the cooperative board and raise a novel issue concerning section 3607 of the Condominium and Cooperative Conversion Protection and Abuse Relief Act (15 USC § 3601 et seq.).
The building in issue which contains 338 apartments is located at 310 East 46th Street in Manhattan and was converted to cooperative ownership on March 31, 1988. Upon conversion to cooperative ownership, title of the building was transferred to respondent Turtle Bay Towers Corp. (the Cooperative). Petitioner Welco Associates (Welco) is the sponsor of the conversion and owns the majority shares of the Cooperative which have not been sold to tenant-shareholders. Petitioner Frederick Elghanayan is a partner of Welco, a partnership. The individual respondents include past and present directors of the Cooperative board and two inspectors of the election held on July 18, 1991.
The plan for the conversion to cooperative ownership (the offering plan) and the bylaws of the Cooperative both provide that the sponsor can control the board of directors for a maximum period of five years from conversion or until a majority of the outstanding shares of stock are sold, whichever is earlier.
At the first election of directors held in 1988 and continuing at the 1989 and 1990 annual shareholders’ meetings, Welco did not exercise control of the board. Welco only nominated two of the persons as directors on the five-person board, and allowed three tenant-shareholders to constitute the majority of the board.
During this period of time Welco filed three amendments to the offering plan setting forth that it relinquished control of the board of directors of the Cooperative.
At the annual meeting held on July 18, 1991, Welco decided to vote its 66% majority shares for three of its directors on the five-member board. The resident shareholders made challenges to Welco’s right to vote for directors of the board based on the ground that Welco has waived its right to control the Cooperative board.
After the election, the inspectors of election determined pursuant to a legal opinion issued by a law firm, that Welco’s ballot was invalid being in violation of the representations made in the tenth, fifteenth and sixteenth amendments of the *1066 offering plan which set forth that the sponsor has relinquished control of the board of Turtle Bay. The inspectors then in a report dated July 25, 1991, certified three resident directors and two sponsor directors as the new board of the Cooperative.
Petitioners in the instant motion seek a judgment pursuant to Business Corporation Law § 619 validating and confirming the election of the directors held on July 18, 1991 and to compel the inspectors to certify the result of the election of the board to include Welco’s ballot. Petitioners assert that with Welco’s ballot the board would consist of three sponsor directors and two resident directors.
Respondents cross-move, inter alia, for summary judgment and for judgment validating and confirming the election of directors at the July 18, 1991 meeting as certified by the report of the inspectors of election.
Petitioners contend that under the offering plan and bylaws of the Cooperative, Welco retains the right to vote for a majority of directors for a period of five years from conversion or the sale of the majority of the outstanding shares of the Cooperative, whichever is earlier. Such contingency has not occurred. Petitioners argue that Welco did not permanently waive the right to control the board by choosing in the past not to exercise its right to vote for a majority of the board.
Respondents argue that Welco has permanently waived control of the Cooperative board pursuant to the tenth, fifteenth and sixteenth amendments of the offering plan.
The record is clear and petitioners do not deny that the reason Welco relinquished control of the board in 1988 was to trigger the running of the two-year window period for the tenant-shareholders to terminate certain self-dealing commercial leases of the sponsor, pursuant to section 3607 of the Condominium and Cooperative Conversion Protection and Abuse Relief Act (15 USC § 3607).
Welco held 99-year commercial leases for the garage, management office and two small storage areas in the basement of the subject building at the time it relinquished control of the board in 1988.
Pursuant to section 3607 (b) of the Act (15 USC § 3607 [b]), any self-dealing contracts of the sponsor which falls within the proscription of section 3607 (a) may be terminated without penalty by the Cooperative only during the two-year period beginning on which, "1) special developer control over the *1067 association is terminated; or 2) the developer owns 25 per centum or less of the units in the conversion project, whichever occurs first.”
Section 3603 (22) of the Act (15 USC § 3603 [22]) defines "special developer control” as "any right arising under State Law, cooperative or condominium instruments, the association’s bylaws * * * through which the developer may control or direct the unit owners’ association or its executive board”.
Welco’s intention in relinquishing control of the board in 1988 was clearly to start the running of the two-year statutory period. This is evidenced in a notice dated May 24, 1988 sent by Welco to all tenant-shareholders of Turtle Bay which states: "Please be advised that, as of April 28, 1988, control of the Board of Directors of Turtle Bay Towers Corp. passed from the sponsor, Welco Associates, to tenant-shareholder representatives. Accordingly, 'Special developer control’ as defined in Section 604 of the Condominium and Cooperative Abuse Relief Act of 1980 [15 USC § 3603 (22)] [the Act], terminated as of that date.”
The tenant-shareholders relied on the sponsor’s waiver of right and elected to terminate Welco’s commercial leases by notice to Welco dated April 9, 1990.
The novel issue raised by these motions is whether the sponsor of a cooperative conversion after having terminated "special developer control” under the Act and the Cooperative has relied and acted upon such termination, can revive its control over the Cooperative board, based on its authority under the offering plan and bylaws of the Cooperative. The court in its research has found no case precedent on point in this jurisdiction.
The Condominium and Cooperative Conversion Protection and Abuse Relief Act of 1980 was enacted to remedy certain abuses in conversions of rental housing into cooperative and condominium forms of ownership. Congress found that in cooperative and condominium conversions "certain long-term leasing arrangements for recreation and other condominium- or cooperative-related facilities which have been used in the formation of cooperative and condominium projects may be unconscionable” (15 USC § 3601 [a] [3]). Congressional intent under section 3607 of the Act was to protect newly formed cooperatives and condominiums from self-dealing or "sweetheart” contracts entered into when the landlord or sponsor is still in control of the property. Section 3607 provides that self- *1068 dealing contracts may be terminated by tenant-shareholders when they gain control of a cooperative or condominium development. (Park S. Tenants Corp. v 200 Cent. Park S. Assocs., 748 F Supp 208 [SD NY 1990]; West 14th St. Commercial Corp. v 5 W. 14th St. Owners Corp., 625 F Supp 934 [SD NY 1986].)
In 2 Tudor City Place Assocs. v 2 Tudor City Tenants Corp. (924 F2d 1247 [2d Cir 1991]), the United States Court of Appeals, Second Circuit, has held that section 3607 of the Act applies to leases even though the section references only "contracts”.
Section 3612 of the Act gives State courts concurrent jurisdiction with Federal courts under this Act (15 USC § 3601 et seq.).
A reading of section 3607 of the Act in conjunction with the policy consideration set forth by Congress leads to the conclusion that once "special developer control” has been terminated by the sponsor under this section it can no longer be revived. To permit a different interpretation and allow the sponsor to revive control of the board could lead to potential abuses which would frustrate the purpose of section 3607 to abate abusive practices pertaining to self-dealing leases or contracts in cooperative and condominium conversions. A sponsor, if permitted to regain control of the board after expiration of the window period can easily enter into new commercial leases, amend terms of or cause assignment of existing commercial leases, all to its benefit in an attempt to circumvent the proscription of section 3607 of the Act. This was obviously not the intent of Congress.
The word "terminate” means to put an end to or to make to cease (Black’s Law Dictionary 1319 [5th ed 1979]) which denotes permanency and not one of temporal in nature.
Welco has clearly surrendered control of the board of directors in 1988 and has filed three amendments to the offering plan to this effect. The sixteenth amendment filed on March 18, 1990 provides in pertinent part that: "The Sponsor relinquished control of the Board of Directors of the apartment corporation as of April 28, 1988 and it presently has two (2) representatives on the Board” (emphasis added).
The language in this amendment is clear that Welco has abandoned all control of the board of Turtle Bay as of April 28, 1988. The definition of the word "relinquish” is to abandon, to surrender or to renounce some right or thing. (Black’s Law Dictionary 1161 [5th ed 1979].)
*1069 Petitioners argue that the language in the three amendments does not state that the sponsor relinquished control of the board for all times. This argument is without merit. Even if there is a doubt as to the meaning of the terms of the contract, such ambiguity must be construed most strongly against the party who prepared the agreement. (67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245; Rentways, Inc. v O’Neill Milk & Cream Co., 308 NY 342; 731 W. Lake Rd. v Boheen, 58 AD2d 1038.)
Further, Welco is estopped from attempting to regain control of the board since the Cooperative relied upon the sponsor’s waiver of right by terminating Welco’s commercial leases and suffered a substantial short-term economic loss as a result of the termination of the leases (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184; Baron v Lombard, 71 AD2d 823, affd 50 NY2d 896).
Welco never objected to the termination notices from the Cooperative on the bases that they were premature.
Petitioner’s argument that the bylaws of the Cooperative give Welco authority to control the board is also without merit. The bylaws of Turtle Bay can only be amended, enlarged or diminished by vote of two thirds of the outstanding shares of the Cooperative. Since Welco holds 66% of the outstanding shares, the bylaws cannot be amended without its consent. The sponsor cannot use the bylaws to avoid compliance with section 3607 of the Act. Moreover, Welco has waived its right under the offering plan and bylaws to control the board of directors in the tenth, fifteenth and sixteenth amendments of the offering plan.
The inspectors of election acted within their scope of authority under Business Corporation Law § 611 to hear challenges in connection with Welco’s right to vote for directors of Turtle Bay and to determine the validity of Welco’s ballot based on the books and records of the Cooperative. Section 611 sets forth the duties of the inspectors to include "hear[ing] and determining] all challenges and questions arising in connection with the right to vote” and to "do such acts as are proper to conduct the election or vote with fairness to all shareholders.” (Matter of Data-Guide Inc. v Marcus, 16 Misc 2d 541.)
Accordingly, petitioners’ motion for a judgment validating and confirming the election of directors held on July 18, 1991 and to compel the inspectors of election to certify the election *1070 of the board held that date is, in all respects, denied. Cross motion by respondents for judgment is granted to the extent of (1) dismissing the petition; (2) validating and confirming the election of directors held on July 18, 1991 as certified by the report dated July 25, 1991 of the inspectors of election; (3) dismissing petitioners’ claims against Marc Luxemburg and Faith Brenner on the ground that they are not proper parties to this action; and (4) dismissing petitioners’ claims for injunctive relief.