**PARK SOUTH TENANTS CORPORATION, Plaintiff–Appellant,**

v.

**200 CENTRAL PARK SOUTH ASSOCIATES, L.P., Bernard Spitzer, Jack Lipman, and Melvin D. Lipman, Defendants–Appellees.**

No. 1718, Docket 91–7388.

United States Court of Appeals, Second Circuit.

Argued July 10, 1991.

Decided Aug. 2, 1991.

Robert Hermann, New York City (Teitelbaum, Hiller, Rodman, Paden & Hibsher, New York City, of counsel), for plaintiff-appellant.

Jonathan Honig, New York City (Robert D. Levin, Annette Ferstenberg, Lowenthal, Landau, Fischer, Ziegler & Bring, New York City, of counsel), for defendants-appellees.

Before MESKILL, NEWMAN and PRATT, Circuit Judges.

PER CURIAM:

This is an appeal from an amended judgment entered in the United States District Court for the Southern District of New York, Conner, *J.*, on April 19, 1991, granting summary judgment in favor of the appellees. This case was brought under the Condominium and Cooperative Conversion Protection and Abuse Relief Act of 1980, 15 U.S.C. § 3601 *et seq.* (the Act). The complaint filed in the district court also sought declaratory relief and raised a pendent state law claim. The judgment of the district court is affirmed.

The instant controversy stems from a conflict between a cooperative housing corporation, Park South Tenants Corporation (Park South) and the sponsor of that development, 200 Central Park South Associates (Sponsor). On January 16, 1984, the apartment building located at 200 Central Park South was converted to cooperative ownership. At the time of the closing, the Sponsor retained certain rights in the building. Specifically, the Sponsor retained a leasehold interest in the building's commercial space, which consisted of a parking garage, two retail stores and nineteen professional offices. Through the execution of a series of five-year leases, the Sponsor could retain this leasehold interest for a period of up to fifty years. The lease called for unapportioned rental payments in the amount of $400,000 per year for the first five years. The Sponsor was required to make these rental payments to the housing corporation, Park South.

Under the cooperative's bylaws and in accordance with New York law, the Sponsor also retained other control rights over the cooperative. Specifically, the Sponsor was permitted to retain control over the cooperative's board until the earlier of (1) the date on which fifty percent of the cooperative shares had been sold to persons unaffiliated with the Sponsor, or (2) five years after the closing. Pursuant to these provisions, the Sponsor controlled the cooperative's board until May 8, 1989, at which time a majority of unaffiliated directors was elected.

On December 5, 1989, the requisite number of the Park South unit owners voted to terminate the garage lease and the Sponsor was so notified. In doing so, Park South exercised the right to terminate expressly conferred on cooperative associations by the Act. *See* 15 U.S.C. § 3607. The Sponsor did not contest the termination, but unilaterally reduced the amount of its yearly unapportioned lease payment to account for the loss of the use of the garage space.

On December 13, 1989, Park South initiated the instant action seeking damages under the Act, 15 U.S.C. §§ 3607, 3611(b). Park South maintained that it was entitled to recover damages to compensate it for the earnings that were captured by the Sponsor under the garage lease from the date of its initial execution to the date of its termination. Park South also sought a declaration that its decision to terminate the lease was proper under federal law and asserted a pendent state law claim for breach of fiduciary duty.

The case came before the district court on the Sponsor's motion for summary judgment and Park South's cross-motion for partial summary judgment. By Opinion and Order dated October 12, 1990, Judge Conner granted the Sponsor's motion with regard to the claim for damages under the Act and dismissed the pendent state law claim for lack of jurisdiction. *See Park South Tenants Corp. v. 200 Central Park South Assocs.,* 748 F.Supp. 208 (S.D.N.Y.1990). Judgment was entered on October 15, 1990. Park South then sought reconsideration and reargument, contending that the district court failed to address the issue of the Sponsor's entitlement to a rent reduction based on the termination of

the garage lease. By an Opinion and Order dated January 17, 1991, the district court declined to reconsider its prior determination and ruled that the issue of rent abatement was one for the New York state courts and denied reargument. *Park South Tenants Corp. v. 200 Central Park South Assocs.*, 754 F.Supp. 352 (S.D.N.Y.1991). On April 19, 1991, the district court entered an amended judgment incorporating its earlier decisions.

We, like the district court, reject appellant's invitation to broaden the extent of relief provided by the Act. The plain language of the Act affords a cooperative association, such as Park South, the right to terminate so-called "sweetheart leases." *See* 15 U.S.C. § 3607. The Act, however, places significant restrictions on the exercise of that right. Section 3607(b) expressly creates a two year window during which cooperative owners can invoke the termination right. The two year window runs from the earlier of two events: (1) the date on which special developer control over the cooperative association ceases, or (2) the date on which the developer holds 25 percent or less of the cooperative units. 15 U.S.C. § 3607(b). Nothing in the language of this provision or the related provisions of the Act suggests that Congress intended to give cooperative associations the right to terminate a "sweetheart lease" at any other time. Nor does the statute indicate that a developer, such as the Sponsor, may be forced to disgorge any profits earned under such leases prior to the time when either of the conditions that trigger the right to terminate occurs and the requisite number of unit owners has voted to terminate. The Act represents an attempt by Congress to provide cooperative and condominium owners with certain minimum rights. The states, however, were left free to regulate more intensively in this area if they saw fit. Here, New York has chosen to restrict to five years the period during which developers can retain special control rights. *See* 13 N.Y.Comp.Codes R. & Regs. § 18.3(v)(5)(iii). The forty-nine remaining states are free to do the same. To the extent Park South contends that stronger federal regulation is needed, those arguments should be addressed to Congress and not to the courts.

We have carefully reviewed the language of the Act and are in agreement with the district court's analysis of the remaining issues. Accordingly, we affirm the judgment of the district court substantially for the reasons stated by Judge Conner in the above-referenced opinions.