The **MOTOR VEHICLE MANUFACTURERS ASSOCIATION OF the UNITED STATES, INC. and The Association of International Automobile Manufacturers, Inc., Plaintiffs,**

v.

**NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, and Thomas C. Jorling, Commissioner of Environmental Conservation of the State of New York, Defendants,**

**American Petroleum Institute, Environmental Defense Fund, and New York State Electric & Gas, Intervenor–Defendants.**

No. 92–CV–869.

United States District Court, N.D. New York.

July 13, 1993.

Kirkland, Ellis Law Firm, Washington, DC (Daniel F. Attridge, of counsel), for Plaintiff.

Robert Abrams, Atty. Gen., State of NY, Albany, NY (Joan Leary Matthews and Helene G. Goldberger, Asst. Attys. Gen., for NY State defendants.

Morgan, Lewis Law Firm, Washington, DC (William H. Lewis, Jr., and David Deal, of counsel), for intervenor-defendant American Petroleum Institute.

Environmental Defense Fund, Nat. Headquarters, New York City (James T.B. Tripp, of counsel), for intervenor-defendant, Environmental Defense Fund.

Huber, Lawrence Law Firm, New York City (Seth A. Davis and Dana J. Reifler, of counsel), for intervenor-defendant, NY State Elec. & Gas.

Attys. Gen. of MA, ME, MD, NJ, RI and VT, and Long Island Lighting Co., Hicksville, NY, as amici curiae.

## MEMORANDUM–DECISION & ORDER ON RECONSIDERATION

McAVOY, Chief Judge.

**Introduction:**

In an Amended Memorandum–Decision & Order dated January 26, 1993 the Court granted Plaintiffs' motion for summary judgment on counts two, four, five and six of the complaint, and granted Defendants' cross-motion for summary judgment on counts one and three of the complaint.[1] On January 26, 1993 the Clerk entered judgment dismissing the action. However, the judgment dismissing Plaintiffs' action was in error because the action was not dismissed, but rather summary judgment was granted in part to Plaintiffs and in part to Defendants. Consequently, on January 28, 1993, pursuant to Fed. R.Civ.P. 60(b)(1), the Court directed the Clerk to enter an amended judgment which, rather than dismissing Plaintiffs' action, granted partial summary judgment to Plaintiffs and partial summary judgment to Defendants. An amended judgment was entered by the Clerk on January 28, 1993.

On February 9, 1993 Defendants applied for an order to show cause for reargument of the Court's January 26, 1993 Amended Memorandum–Decision & Order and for a stay pending reargument. On that date, Defendants filed their memorandum of law in support of the motion with the Court. After reviewing Defendants' memorandum of law, the Court denied Defendants' application for an order to show cause and instead directed them to notice their motion for a regularly scheduled motion date. That very same day Defendants served the Notice of Motion, supporting affidavits and memorandum of law on Plaintiffs' Washington, D.C. counsel via Airborne Express, and on Plaintiffs' local counsel via regular first class mail. The following day, February 10, 1993, Defendants filed their Notice of Motion for relief pursuant to Fed.R.Civ.P. 59(e), 62(b) and 62(c) and supporting affidavits with the Court.

---

1. Familiarity with the Court's January 26, 1993 Amended Memorandum–Decision & Order, 810 F.Supp. 1331, is assumed.

## I

■ Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to alter or amend a judgment shall be "served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). Plaintiffs argue that the present motion is untimely because it was not served within the ten day period. They first contend that the time within which to file the motion began when the first judgment was entered—that is, on January 26, 1993—and not when the amended judgment was entered two days later. However, regardless of whether the time should run anew from the amended judgment, the Court finds that the motion was timely with respect to either the January 28, 1993 amended judgment, or the January 26, 1993 judgment.

If the operative date is January 26, 1993, Defendants had until February 9, 1993 to serve their motion pursuant to Fed.R.Civ.P. 59(e). There is no dispute that Defendants' motion papers were served via regular first class mail on Plaintiffs' local counsel on February 9, 1993. Therefore, *assuming* that Plaintiffs' position is correct and the time period must be measured from the January 26, 1993 judgment, the instant motion was timely under Rule 59(e).

■ Plaintiffs also argue that the motion is not timely under Northern District of New York Local Rule 10(m) which provides that motions for reargument must be "**filed** and served" within the ten day period. However, it is clear that Defendants' memorandum of law in support of their motion was filed with the Court on February 9, 1993. While the actual Notice of Motion and supporting affidavits were not filed on February 9, 1993, the Court finds that the filing of the memorandum of law and the application for the order to show cause sufficiently presented the motion to the Court on that date for the purposes of Local Rule 10(m). Therefore, Plaintiffs' argument regarding the timeliness of the instant motion under Local Rule 10(m) must also fail.

## II

Not only did the parties submit voluminous documentation on the cross-motions for summary judgment, but they have submitted more than ample documentation in support of, and in opposition to, the instant motion for reargument. On reconsideration Defendants argue that the Court erred in granting summary judgment to Plaintiffs on counts two, four, five and six of the complaint. In the first instance, Defendants contend that they, rather than Plaintiffs, are entitled to summary judgment on all counts in the complaint; however in the alternative, Defendants assert that there are questions of fact remaining on counts two, four, five and six which preclude the granting of summary judgment. In opposition, Plaintiffs contend that the case was properly decided. They further argue that Defendants have not met the standard for a motion under Rule 59(e).

■ As this Court has stated previously, a motion for reconsideration "will be granted 'only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision.' *Park South Tenants Corp. v. 200 Central Park South Associates, L.P.*, 754 F.Supp. 352, 354 (S.D.N.Y.), *aff'd*, 941 F.2d 112 (2d Cir.1991); *see also New York News Inc. v. Newspaper and Mail Deliverers Union of New York*, 139 F.R.D. 294 (S.D.N.Y. 1991)." *Inmates of New York with Human Immunodeficiency Virus v. Cuomo*, 1992 WL 373516, slip op. at 2 (N.D.N.Y.1992) (McAvoy, J.). The decision to grant or deny such a motion is within the sound discretion of the Court. *See McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983). When considering a motion such as this, the Court is mindful that there is a strong interest in the finality of judgments. However, where the motion is timely and properly supported, the Court must carefully consider whether any manifest errors were made in the first instance. If so, the Court should take a second look at its original decision and reconsider it in light of the matters raised by the movant.

■ Nonetheless, a motion for reconsideration under Rule 59(e) is not simply a second opportunity for the movant to advance arguments already rejected, or to present evidence which was available but not previously introduced. Rather, the movant must come

forward and specifically identify those matters which it believes the Court has overlooked and why such matters would render the Court's prior decision erroneous. Absent such a showing, the Court should not reconsider its earlier ruling. In the instant case Defendants have made an appropriate showing. The record before the Court supports reconsideration at this time, and for the reasons expressed below, the judgment previously entered is hereby vacated.

### III

■ Defendants argue that the Court incorrectly granted summary judgment to Plaintiffs on count two of the complaint, and that instead the Court should have granted summary judgment to Defendants. In the alternative, Defendants argue that there are questions of material fact remaining. In response, Plaintiffs argue that Defendants are simply reiterating arguments already considered and rejected by the Court, and therefore they have not met the standard on a motion for reconsideration.

In count two of the complaint Plaintiffs alleged that the New York State Department of Environmental Conservation's (DEC) adoption of the Part 218 Regulations violates the "undue burdens" and "third vehicles" prohibitions of § 177 of the Clean Air Act, 42 U.S.C. § 7507. The Court found that New York's adoption of the Part 218 Regulations, which did not include restrictions on the content of fuels sold in New York, would have the effect of creating a "third vehicle" and therefore, as a matter of law violated § 177 of the Act.

Specifically, the Court's decision rested on a finding, which is in retrospect erroneous, that as a matter of law the content of New York fuels would force Plaintiffs to redesign the exhaust emission control system of vehicles designed for sale in California in order to meet the vehicle emission standards contained in the Part 218 Regulations. The error in the Court's decision was in not considering the degree and nature of the effect which the unregulated New York fuels would have on the emission control systems on the California vehicles.

There was no genuine issue as to the fact that New York's unregulated fuels would have **an** effect on the emission control systems. In part, the evidence submitted by Plaintiffs tended to prove that higher sulfur fuels would decrease the efficiency of emission control systems. Considering this evidence in conjunction with the evidence which demonstrated that higher mileage decreased the efficiency of the emission control systems, the Court concluded that the catalytic converters on New York vehicles would necessarily have to be replaced sooner than catalytic converters on California vehicles, and likely within the warranty period. Therefore, the Court held that Plaintiffs would be forced to manufacture a "third vehicle" to take into account the higher sulfur content of New York fuels.

Having reviewed the papers submitted on the original cross-motions for summary judgment, the Court finds that this earlier ruling was in error. Affidavits submitted by Defendants' experts disputed the conclusions reached by Plaintiffs' experts as to the degree and nature of the effects which higher levels of sulfur would have on the emission control systems. Although the Court has earlier ruled that the degree of such effect is irrelevant, on reconsideration the Court finds that the **nature and degree** of this effect are significant to, and indeed controlling factors in, a determination on count two of the complaint. Therefore, because there are material questions of fact remaining on count two of the complaint which cannot be resolved on motions for summary judgment, both Defendants and Plaintiffs' motions for summary judgment should have been denied. The Court hereby vacates part IV.(B) of the Amended Memorandum–Decision and Order dated January 26, 1993, and now finds that there are material questions of fact remaining as to count two of Plaintiffs' complaint.

### IV

■ In count four, Plaintiffs alleged that DEC's adoption of the Part 218 Regulations did not comply with the two year leadtime provisions of § 177 of the Act. Because the 1995 standards were adopted less than two years before the commencement of the 1995

model year, summary judgment was granted to Plaintiffs. Defendants now argue that the Court erred in granting Plaintiffs' motion for summary judgment on count four of the complaint. They advance three principal arguments: first, that the Court's reading of the two year leadtime requirement would preclude a § 177 state from adopting standards identical to those adopted by California for the 1996 model year; second, that Plaintiffs failed to demonstrate that New York did not provide two years leadtime with respect to the 1995 standards; and third, that the Court should consider "splitting" the model year.

Under § 177 of the Act, New York is authorized to adopt motor vehicle emission standards "identical to the California standards for which a waiver has been granted for such model year, ...". 42 U.S.C. § 7507(1). However, § 177 also requires, as a prerequisite to New York's adoption of motor vehicle emission standards, that both California and New York "adopt such standards at least two years before commencement of such model year ...". 42 U.S.C. § 7507(2). Defendants argue that once New York takes the step of adopting the California standards for any particular year, it is required by the statute to revise those standards in accordance with subsequent amendments adopted by the California Air Resource Board (CARB). Unlike New York, however, California may adopt motor vehicle emission standards without the two year leadtime required of New York and other § 177 states. See 42 U.S.C. § 7543(b). Therefore, Defendants contend that the Court's strict interpretation of the two year leadtime requirement would preclude New York from revising its standards in accordance with amendments adopted by CARB if those amendments were adopted less than two years prior to the commencement of the model year.

In response, Plaintiffs argue that Defendants position is based upon "an extreme interpretation of § 177 that no party to this litigation has advocated ...". (Plaintiffs' Memorandum in Opposition to Motion for Reargument at p. 22.). Plaintiffs assert that the California standards to which the leadtime requirement applies are the same Cali-

fornia standards that must receive a waiver from the Environmental Protection Agency (EPA) before they can be adopted by a § 177 state. Under Plaintiffs' interpretation of the statute the two year leadtime requirement would not apply if the subsequent revisions of the California standards adopted by CARB were found to be within the scope of a previous waiver. Conversely, under this interpretation the two year leadtime requirement would apply to California standards for which the EPA determines a new waiver is required.

The Court found that this issue was academic because there were no claims that the delay in adopting the California LEV standards for model year 1995—that is, the delay which the Court found violated § 177—was caused by subsequent amendments adopted by CARB. Defendants point out that in support of New York State DEC's cross-motion for summary judgment Colleen McCarthy, a senior attorney with the New York State DEC, stated in her affidavit that CARB is in the midst of revising the nitrogen oxides ($NO_x$) standard for the 1996 model year. They assert that there is no reason to believe that CARB will not complete its revision of the $NO_x$ standard for the 1996 model year; and that if CARB does so then New York will be required to adopt such revision less than two years prior to the commencement of the model year. Therefore, Defendants argue that the issue is not academic.

Although Defendants have raised an interesting issue, and likewise Plaintiffs have presented a persuasive response, the Court is still of the opinion that the issue is not properly presented. Moreover, the argument now advanced would not have materially altered the court's prior decision. While CARB may be in the process of revising its $NO_x$ standard for the 1996 model year, no party has argued that New York's adoption of such revision would violate the two year leadtime requirement of § 177; and this was not the holding of the Court. Indeed, Plaintiffs have taken the position that if such revisions are within the scope of the previous waiver granted by the EPA then New York's revision of the $NO_x$, standard would not trig-

ger the two year leadtime requirement.[2] Moreover, any amendments to the standards adopted by CARB for the 1996 model year were not presented to the Court on the original cross-motions for summary judgment and in fact were not the subject of Plaintiffs' complaint, and consequently are not a proper subject for a motion for reconsideration of that decision. Therefore, the Court declines to reconsider its ruling on count four of the complaint based upon Defendants first argument.

Next, Defendants argue that Plaintiffs failed to demonstrate that New York did not comply with the two year leadtime requirement with respect to the 1995 standards. They argue that out of the many motor vehicle manufacturers which Plaintiffs represent only one has asserted that the production of its 1995 model year vehicles will commence less than two years after May 28, 1992. Moreover, Defendants assert that this sole manufacturer failed to provide the Court with anything beyond a conclusory statement that it will begin production before that date.

On the latter point, the Court disagrees with Defendants. Plaintiffs presented *uncontroverted* evidence that production will commence on all General Motors' 1995 vehicles prior to May 28, 1994. Not only did Defendants fail to present any evidence which would demonstrate a question of fact on this point, but they failed to move for additional discovery pursuant to Fed.R.Civ.P. 56(f). Therefore, insofar as the Court has held that DEC violated the leadtime requirement of § 177 as to all General Motors 1995 vehicles, the motion for reconsideration is denied. However, Defendants have met the standard for reconsideration in a slightly different respect.

While Plaintiffs represent nearly all automobile manufacturers which sell their products in the United States, in support of their motion for summary judgment they submitted evidence only as to the commencement of production for General Motors' 1995 vehicles. Defendants contend that Plaintiffs have therefore failed to satisfy their burden on summary judgment in this regard. In response, Plaintiffs argue that it would have been both redundant and unnecessary for them to have introduced evidence on the scheduled production dates for every member manufacturer. Moreover, they contend that if Defendants found such evidence relevant to the issues presented, they should have sought discovery and offered evidence on that point.

The matter now being raised by Defendants, although not squarely presented on the cross-motions for summary judgment[3], was one not fully considered by the Court in its original decision, and in retrospect would have materially altered the prior decision. Plaintiffs alleged in the complaint, and Defendants have not disputed, that the 1995 model year begins "as early as January 2, 1994." (Complaint at ¶ 56). Therefore, in order to provide the two year leadtime required under § 177, DEC **may** be required to adopt the 1995 model year standards **as early** as January 1, 1992. However, the fact that the 1995 model year may begin *as early as* January 2, 1994 does not mean that in all instances, as to all manufacturers, the 1995 model year begins on January 2, 1994. Production of the 1995 vehicles may in fact begin later than that date. However, because DEC adopted the 1995 model year standards on May 28, 1992, it has only satisfied the two year leadtime requirement as to those manufacturers whose production of 1995 vehicles commences after May 28, 1994.

On a motion for summary judgment the moving party has the initial burden of dem-

---

**2.** Defendants assert in their reply memorandum of law that Plaintiffs' contention that the current $NO_x$ CARB rulemaking will fall within the scope of the previously granted waiver is pure conjecture. This may be so, however it is likewise pure conjecture to maintain that the current rulemaking will fall outside of the previously granted waiver. It is in part for this very reason that the court finds that the issue is not properly presented.

**3.** Defendants present argument that Plaintiffs failed to meet their burden of proof as to the fourth count in the complaint was previously raised in the New York State Defendants reply memorandum filed on December 7, 1992. They argued at p. 7 in footnote 13: "Only GM has claimed any "burden" of a four-month reduction in a two year leadtime period; this cannot be extrapolated industry-wide."

onstrating that there is no genuine issue of material fact. In the case of a cross-motion like Defendants', however, that burden can be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The non-movant, here Plaintiffs, then bears the burden of demonstrating the existence of the elements necessary to its claim. *Id.; see also Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991).

Because Plaintiffs alleged in the complaint that DEC violated § 177 by failing to provide the required leadtime for the model year 1995 standards, it was therefore their burden to demonstrate that there was no genuine issue of material fact on that claim. As noted above, Plaintiffs satisfied this burden as to vehicles manufactured by General Motors. However, Plaintiffs failed to present any evidence as to their other members. Contrary to Plaintiffs' present arguments, such evidence is neither redundant nor unnecessary.

In enacting § 177 Congress balanced the states' need to regulate motor vehicle emissions against the consequent burden on motor vehicle manufacturers' and determined that two years advance notice of a state's adoption of California's new motor vehicle emission standards was sufficient. However, Congress did not define the date from which the two years must be measured. Rather, the two year leadtime requirement hinges on the commencement of production for a particular model year, which is, with certain limitations, in the particular manufacturer's discretion. Whether a state has complied with the leadtime requirement of § 177 therefore depends upon two dates: the date on which production for a particular model year is to commence, and the date on which the state adopts the standards for that model year.

DEC adopted the instant standards on May 28, 1992. General Motors has determined that the production of its model year 1995 vehicles will commence prior to May 28, 1994. Consequently, General Motors was not provided with sufficient notice of the 1995 standards. However, the fact that General Motors decided to commence production prior to May 28, 1993 and was therefore not provided sufficient notice under the statute, does not translate into a finding that all other manufacturers were not given sufficient notice. If a manufacturer does not commence production of its model year 1995 vehicles prior to May 28, 1994, then it has, as a matter of law, been provided with sufficient notice of the 1995 standards. The failure to provide the statutory leadtime to a particular manufacturer for a particular model year does not *invalidate* the standards themselves. Instead, it merely renders them unenforceable as against those manufacturers which were not given the requisite two-years notice.

The Court will not reconsider its ruling that DEC must provide the requisite two year leadtime. However, insofar as the prior ruling can be construed as *invalidating* the model year 1995 standards as to *all* manufacturers, the Court hereby modifies that ruling and finds that the model year 1995 standards are unenforceable as against those manufacturers which commence production of the 1995 vehicles prior to May 28, 1994.

Finally, Defendants argue that the Court should consider "splitting" the model year. In other words, Defendants argue that the Court should consider applying the model year 1995 standards to those particular models the production of which is to commence after May 28, 1994, even if a manufacturer will commence production of its other models prior to May 28, 1994. Plaintiffs correctly point out that this argument was not advanced in Defendants' cross-motions for summary judgment. Although the position now advanced by Defendants was contained in a letter from former EPA Administrator William Reilly to DEC Commissioner Thomas Jorling which was filed with the Court on January 14, 1993, it was not argued by Defendants in their motion papers or at oral argument. Consequently, the Court did not express an opinion on the position taken by the former EPA Administrator and presently advanced by Defendants. Therefore, this issue is not properly before the Court on a motion for reconsideration.

For these reasons, the Court finds that partial reconsideration of its earlier decision granting summary judgment to Plaintiffs on

count four of the complaint is warranted. The Court hereby modifies part IV.(F) of the Amended Memorandum–Decision and Order dated January 26, 1993. Summary judgment is granted to Plaintiffs on count four. However, in order to clarify the prior ruling, on count four of the complaint the Court finds that the model year 1995 standards are unenforceable as against those manufacturers which commence production of the 1995 vehicles prior to May 28, 1994.

## V

■ In count five Plaintiffs alleged that zero emission vehicle sales mandate contained in the Part 218 Regulations is in violation of the § 177 prohibition on indirect sales limits. Section 177 provides that a state which adopts California vehicle emission standards shall not "prohibit or limit, directly or indirectly, the manufacture or sale of a new motor vehicle or motor vehicle engine that is certified in California as meeting California standards ..." 42 U.S.C. § 7507 (West Supp.1992). The Court found that the zero emission vehicle sales mandate adopted as part of the Part 218 Regulations effectively limited the sales of all other classes of California certified vehicles.

Defendants argue that the Court erred in granting Plaintiffs motion for summary judgment on count five in the complaint. Specifically, Defendants argue that § 177 does not prohibit limitations on the sale of certain classes of California certified vehicles, but rather sales of California certified vehicles generally. Defendants maintain that the zero emission vehicle sales requirement does not limit the sale of California certified vehicles generally; instead, Defendants argue, it requires the sale of such vehicles. This argument was advanced by DEC in support of its cross-motion for summary judgment and rejected by the Court.

While the regulations may in fact require the sale of California certified vehicles generally, the effect of mandating that a certain percentage of such vehicles fall into a particular class is to limit the number of other California certified vehicles which a manufacturer can sell in New York. The sales mandate therefore constitutes a limit on the sale of all other new motor vehicles "... that [are] certified in California as meeting California standards ...", 42 U.S.C. § 7507 (West Supp.1992). Defendants' motion fails to identify matters that were overlooked and which would have materially altered the Court's decision.[4] Therefore, the Court will not reconsider its ruling on count five of the complaint.

## VI

Count six of the complaint alleges that the zero emission vehicle mandate contained in the Part 218 Regulations violates the "third vehicle" prohibition of § 177. Plaintiffs argued, and the Court agreed, that if required to sell a particular number of zero emission vehicles in New York, manufacturers would be forced to include an enhanced heating system, such as a fuel fired heater, to satisfy local climatic conditions. Because such a vehicle would be different than zero emission vehicles certified under California standards, the Court found that the sales mandate violated § 177.

Defendants raise a number of arguments concerning count six; and the court recognizes that Defendants have presented new evidence which would otherwise warrant reconsideration on count six.[5] However, because the Court has already ruled in count five that the zero emission vehicle sales mandate violates § 177, consideration of Defendants present arguments is not necessary. Therefore, it the exercise of its discretion,

4. Defendants argue that if the sales mandate violates § 177 as alleged in Plaintiffs' complaint, then the fleet average requirements of the Part 218 Regulations likewise constitute a limit on the sale of California certified vehicles. However, as Plaintiffs point out in their opposition and surreply papers, the Part 218 Regulations do not include an enforcement mechanism for the fleet average requirements. Moreover, the complaint does not challenge the validity of the fleet average requirements. Therefore, the issue of wheth-

er the fleet average requirements violate § 177, and the related issue of whether the fleet average requirements are "emission standards" which a § 177 state must adopt to satisfy the "identicality requirement", are not presented in this case and need not be decided.

5. Defendants argue that CARB has recently approved the use of fuel fired heaters in zero emission vehicles. Previously, electric vehicles with fuel fired heaters were not certified as zero emis-

the Court declines the opportunity to reconsider its earlier ruling on count six of the complaint.

## CONCLUSION

Having reconsidered its earlier ruling in this matter, the Court hereby vacates the judgment entered on January 28, 1993. For the reasons expressed above, the Amended Memorandum–Decision & Order dated January 26, 1993 is hereby modified. On count two of the complaint, the court finds that there exists genuine issues of material fact precluding summary judgment. As for count four of the complaint, summary judgment is granted to Plaintiffs in that the model year 1995 standards are unenforceable as against those manufacturers which commence production of the 1995 vehicles prior to May 28, 1994. Because Defendants failed to meet the standard for reconsideration, the court's ruling on count five of the complaint remains; and therefore, the court declines to reconsider its ruling on count six.

**IT IS SO ORDERED.**

sion vehicles under the California standards. Therefore, until CARB's recent approval, if local climatic conditions forced a manufacturer to include a fuel fired heater on a zero emission vehicle sold in New York, that vehicle would be different than a zero emission vehicle certified under California Regulations. Defendants now argue that Plaintiffs' "prior concerns for conventional heaters have dissipated with [CARB's] approval of fuel fired heaters for [zero emission vehicles]." (*Defendants' Reply Memorandum in Support of their Motion for Reargument* at p. 29).