In re William Stephen WHITE, Debtor.

William Stephen White, Plaintiff,

v.

United States Department of Education, Sallie Mae, Nebraska Student Loan Program, Citibank Student Loan Corporation, Defendants.

Bankruptcy No. 98–03248–BGC–7.
Adversary No. 98–00320.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Dec. 1, 1999.

Kimberly Glass, Birmingham, Alabama, for plaintiff-debtor.

Leon F. Kelly, Jr., Assistant United States Attorney, Birmingham, Alabama, for U.S. Dept. of Education.

Mark Williams, Birmingham, Alabama, for Nebraska Student Loan Corporation.

### ORDER DENYING
#### Plaintiff's Motion to Alter, Amend or Vacate

BENJAMIN COHEN, Bankruptcy Judge.

The matter before the Court is the *Plaintiff's Motion to Alter, Amend or Vacate* filed by the debtor on October 12, 1999.[1] In that motion the debtor asks the Court to reconsider the Opinion and Order entered on September 30, 1999, finding that unpaid student loan debts owed to The United States Department of Education and the Nebraska Student Loan Program were non-dischargeable.[2] After notice, a hearing was held November 8, 1999.

The debtor contends that during the time between March 10, 1999, (the date of the evidentiary hearing on this matter) and September 30, 1999, (the date of the Court's opinion and order), that his family's financial conditions changed dramatically. The debtor asks the Court to consider those changed circumstances and to alter or amend or vacate its findings of fact and conclusions of law because of those changes.

### I. Current Financial Conditions

In its initial decision, this Court applied the three-part test of *Brunner v. New York State Higher Edu. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987) as the legal standard for determining whether an unpaid student loan was non-dischargeable on grounds of undue hardship. Based on the evidence presented to the Court in the form of a *Joint Stipulation of Facts,* this Court concluded that the debtor could pay his outstanding student loan debts without suffering such hardship.

The first part of the *Brunner* test requires the debtor to prove that he or she, "cannot maintain, based on **current** *income and expenses*, a 'minimal' standard of living for herself [or himself] and her [or his] dependents if forced to repay the loans...." *Id.* at 396 (emphasis added) (parentheticals added). In deciding the dischargeability matter, this Court recognized, even if not stating directly, that the evidence before the Court reflected this debtor's *current financial conditions* for purposes of the *Brunner* test. For purposes of the pending Rule 59 motion, this Court believes that it should adhere to that recognition. The reason is basic, as the practical suggestion of the court in *In re Roberson,* 999 F.2d 1132 (7th Cir.1993) demonstrates. The opinion there reads in part:

The first prong of *Brunner* requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary. Bankruptcy courts have routinely applied this requirement as the bare minimum to assert a claim of "undue hardship" warranting discharge of student loans. See, e.g., *In re Ipsen,* 149 B.R. 583, 585–86 (Bankr.W.D.Mo.1992). Student loans "should not as a matter of policy be dischargeable before [the debtor] has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt." Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc. No. 137, 93d Cong., 1st Sess., Pt. II, at 140 n. 15 (1973). In light of the heightened standard for dischargeability

---

1. The debtor's motion is filed pursuant to Rule 59 of the Federal Rules of Civil Procedure. That rule applies to this matter by way of Rule 9023 of the Federal Rules of Bankruptcy Procedure.

2. The motion was filed 12 days after the Court entered its order but the motion was timely. The tenth day after entry of the order was Sunday, October 10. The eleventh day was Monday, October 11, Columbus Day, a federal holiday.

of student loans, an examination into the debtor's ability to maintain a minimal standard of living comports with common sense. *Brunner*, 831 F.2d at 396. *This test should serve as the starting point for the § 523(a)(8)(B) inquiry since information regarding the debtor's current financial situation generally will be concrete and readily obtainable; only if the debtor meets this test should a court examine the other two Brunner requirements.*

*Id.* at 1135.[3]

 This Court agrees. How could any student loan dischargeability matter be finalized unless a court selects a time to evaluate "current" financial conditions?[4] To do otherwise would create significant factual, legal, and practical problems in the administration of bankruptcy estates.

## II. Motions to Alter or Amend

 Courts agree that motions to alter or amend are to be allowed only for

3. The debtor argues that application of bankruptcy law is a fluid process that occurs, sometimes, over a lengthy period and that the changes here are such that the Court should apply the *Brunner* test to these changed circumstances. While the Court agrees that changed circumstances require consideration in some bankruptcy situations, normally such changes are not considered in determining dischargeability of student loans.

4. The basis of this Court's initial ruling in the adversary matter is the legal requirement that courts should consider spouses' combined incomes when reviewing the lifestyle requirements of the *Brunner* test. In this proceeding, this Court found that the debtor's wife's income was clearly sufficient for the two to live comfortably and to pay the debtor's student loans, without undue hardship. In reviewing that principle for purposes of the pending matter, the Court must recognize that while the debtor's wife's income may indeed have dropped, as the defendants point out, her earning capacity has not.

What if the Court were to find that the debts were dischargeable but all were to learn that the debtor and his wife had substantial increases in their incomes within the year following? Would the defendants be entitled to come to this Court for a review? Clearly not.

extraordinary circumstances. The court in *In re Stoecker*, 143 B.R. 118, 147 (Bkrtcy. N.D.Ill.1992) *rev'd on other grounds*, 5 F.3d 1022 (7th Cir.1993) explains:

Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir.1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.*, 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill.1976); *In re BNT Terminals,*

Of course, there are situations where Rule 59 motions should be granted and decisions must be reviewed and changed. The immediate one does not appear to be such a situation. Even if the Court were to take the unusual step of considering the changed facts now presented, the ultimate decision would not, as discussed below, change; consequently, for the Court to reject the current motion does not present an unjust situation.

While the debtor's financial situation is recognizably worse now than the trial evidence described, his situation probably would not qualify as an undue hardship situation. The facts the debtor presented with his motion indicate that his lifestyle would not continue as before but those same facts do not demonstrate that the debtor and his family cannot maintain a minimal lifestyle—*or that they do not have the capacity to do so.* The result is clearly unfortunate for the debtor and his family, but dischargeability of student loans is one area where Congress imposes severe restrictions on debtors and bankruptcy courts. The most recent in that regard was an amendment to section 523(a)(8) that removed one of the two remaining exceptions to the non-dischargeability of student loans from a bankruptcy court's consideration, that is, a student loan is no longer dischargeable simply because of the age of the loan.

*Inc.,* 125 B.R. 963, 976–977 (Bankr. N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals* at 977.

*Id.*

These extraordinary circumstances in turn restrict a court's approach to a Rule 59(e) motion. The bankruptcy court in *In re Salter,* 213 B.R. 116, 118 (Bankr. S.D.Miss.1997), explains:

"A party may properly use a motion to alter or amend a judgment under FRCP 59(e) to request the trial court to correct errors of law or mistakes of fact in its judgment." 3 Shepard's Editorial Staff, Motions In Federal Court, 3 Ed. § 9.59 (footnote omitted). Rule 59(e) may be utilized:

—to vacate an order, such as an order of dismissal, or a grant of summary judgment.

—to make minor alterations of the judgment.

—to grant relief requested but not considered in the original judgment.

—to correct errors of law.

—to vacate a judgment because the court lacked subject matter jurisdiction.

. . . .

If properly raised, a motion to alter or amend a judgment is not limited to the issues expressly raised therein, but the effect of such a motion is to open up the judgment for a correction of any other error which may have intervened in entry of the judgment. 25 Fed.Proc. L.Ed. 3rd § 58:42 (footnotes omitted).

As evident above, a motion to alter or amend may be utilized to correct a judgment for a wide variety of errors, but its use is not limitless. A motion to alter or amend a judgment under Rule 59(e) "is not available for motions seeking

—the complete reversal of a judgment simply because it is erroneous.

. . . .

—to present additional evidence or legal theories not brought forward previously." Id.

"A motion under FRCP Rule 59(e) to alter or amend a judgment is addressed to the sound discretion of the trial court." 3 Shepard's Editorial Staff, Motions in Federal Court, 3 Ed. § 9.64 (footnote omitted). The Fifth Circuit Court of Appeals has held that a court "has considerable discretion in deciding whether to ... [grant a motion] under Rule 59(e). However, its discretion is not without limit. The court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,* 6 F.3d 350, 355 (5th Cir.1993).

*Id.*[5]

5. See also the explanation offered in *Yashiro Co., Inc. v. Falchi (In re Falchi),* No. 97–B–43080(JLG), 1998 WL 412663, at *2 (Bankr. S.D.N.Y. July 12, 1998), which reads:

We have discretion to grant or deny a motion for reconsideration. *McCarthy v. Manson,* 724 F.2d 234, 237 (2d Cir.1983); *Mellon Bank, N.A. v. U.S. Trustee (In re Victory Markets, Inc.),* No. 95 CV 1619, 1996 WL 365675, at * 2 (N.D.N.Y. June 21, 1996). The standard we apply in exercising our discretion under Rule 59 is a strict one. *Farkas v. Ellis,* 783 F.Supp. 830, 833

(S.D.N.Y.1992) (citing *Ruiz v. Commissioner of D.O.T. of City of New York,* 687 F.Supp. 888, 890 (S.D.N.Y.1988), aff'd, 858 F.2d 898 (2d Cir.1988)), rearg. denied, 783 F.Supp. 830 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir.1992); *McCarthy v. Manson,* 714 F.2d at 237. We will grant the motion only if we have overlooked matters or controlling decisions which might have materially influenced our earlier decision. *Farkas v. Ellis,* 783 F.Supp. at 832; accord *Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.1988); see also *Park South Ten-*

## III. Conclusion

The Court does not find that its final judgment was unjust or unfounded or would become so as the pending motion is denied. The debtor did not show that the Court needs to correct manifest errors of law or fact or to consider the import of newly discovered evidence. Between the competing interests described above in *Salter*, the Court finds that this matter must become final. The *Plaintiff's Motion to Alter, Amend or Vacate* is due to be denied.[6]

## IV. Order

Based on the above, it is **ORDERED, ADJUDGED, AND DECREED,** that the *Plaintiff's Motion to Alter, Amend or Vacate* is **DENIED.**

ants Corp. v. 200 Central Park South Associates, L.P., 754 F.Supp. 352, 354–355 (S.D.N.Y.1991) (denying motion to reargue because movants did not assert any matters which the court had overlooked), aff'd, 941 F.2d 112 (2d Cir.1991); *Novak v. National Broadcasting Co.*, 760 F.Supp. 47, 48–49 (S.D.N.Y.1991) (denying plaintiff's motion to reargue because plaintiffs did not persuade court that a case which it relied on in reaching its decision did not apply). Thus, Rule 59 " '[e]nsure[s] the finality of decisions and ... prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.' " *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y. 1988) (quoting *Lewis v. New York Telephone*, No. 83 Civ. 7129, 1986 WL 1441, Slip op. at 2 (S.D.N.Y. Jan. 29, 1986) [1986 WL 1441]); accord *In re Victory Markets*, 1996 WL 365675, at *2 ("although 'clear error' and 'preventing injustice' are valid grounds for reconsideration, the party seeking reconsideration must not use this vehicle as a means to re-litigate issues previously decided by the Court, or to attempt to 'sway the judge' one last time.") (citing *Saratoga Harness Racing, Inc. v. Veneglia*, 897 F.Supp. 38, 40 (N.D.N.Y.1995)). *Id.*

6. The debtor's motion asks the Court to alter or amend or *vacate* the judgment entered against the debtor. To the extent that the "vacate" portion of the motion is a request for a new trial under Rule 59(a), that is to "direct the entry of a new judgment," Fed. R.Civ.Pro. 59(a), the Court finds that a new trial should not be allowed. Like motions to alter or amend, the standards for granting motions for new trials are strict. See the portion of the opinion of the court in *Yashiro Co., Inc. v. Falchi (In re Falchi)* quoted above in note 5.