The NEW YORK STATE AUTOMOBILE DEALERS ASSOCIATION, Syracuse Auto Dealers Association, Inc., Rochester Auto Dealers Association, Inc., Niagara Frontier Auto Dealers Association, Inc., and Capital Region Auto Dealers Association, Inc., Plaintiffs,

v.

The NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION and Thomas C. Jorling, Commissioner, Defendants.

No. 93–CV–659.

United States District Court,
N.D. New York.

July 13, 1993.

Order Denying Reconsideration
Aug. 27, 1993.

Whiteman, Osterman Law Firm, Albany, NY (Jonathan P. Nye, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen., Albany, NY (Joan Leary Matthews, Val E. Washington, Helene G. Goldberger, Asst. Attys. Gen., of counsel), for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs challenge the new motor vehicle emission regulations for model year 1994 vehicles ("1994 standards") contained at 6 N.Y.C.R.R. Part 218 ("Part 218 Regulations"), which were adopted by the New York State Department of Environmental Conservation (DEC). Like the plaintiffs in *MVMA v. Jorling*, 810 F.Supp. 1331 (1993), the instant plaintiffs allege that DEC's adoption of the Part 218 Regulations violates § 177 of the Clean Air Act, 42 U.S.C. § 7507.[1]

The complaint contains two causes of action. In their first cause of action, plaintiffs allege that the 1994 standards adopted by DEC are not identical to the California standards for which a waiver has been granted by the Environmental Protection Agency (EPA). In their second cause of action, plaintiffs allege that in adopting the 1994 standards DEC failed to comply with the two year leadtime requirement of § 177. Presently before the court is plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs contend that there is no genuine issue of material fact and therefore that judgment in their favor is proper on both counts in the complaint.

Defendants have opposed plaintiffs' summary judgment motion. However, they have also filed a cross-motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants' first argument is that plaintiffs lack standing, and therefore that the court lacks jurisdiction to consider the merits of the complaint. In the alternative, defendants argue that: (a) plaintiffs' action should be barred by the doctrine of laches because they have unreasonably delayed in asserting their claim; (b) the complaint fails to state a claim for relief under § 177 of the Clean Air Act; and (c) summary judgment should be granted against plaintiffs.

The court heard oral argument on this matter on July 2, 1993 in Albany, New York. Now, having considered the arguments of the parties, the court grants defendants' motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1). For the reasons discussed below, the court concludes that plaintiffs lack standing to assert the claims contained in the complaint, and that the court therefore lacks jurisdiction. Consequently, the remaining arguments presented by the instant motions cannot be considered.

### I

DEC has adopted two sets of California's new motor vehicle emission standards pursuant to § 177 of the Clean Air Act. Under this regulatory scheme, only those new motor vehicles which comply with the applicable emission standards contained in the Part 218 Regulations may be registered in the State of New York. Therefore, new motor vehicles which are designed to comply with the less stringent emission standards established by the EPA ("the federal standards") may not be registered in New York.

---

1. § 177 of the Clean Air Act provides, in relevant part, that a state may adopt and enforce standards relating to the control of new motor vehicle emissions if—

    "(1) such standards are identical to the California standards for which a waiver has been granted for such model year, and

    (2) California and such State adopt such standards at least two years before the commencement of such model year (as determined by regulations of the Administrator)."

    42 U.S.C. § 7507 (West Supp.1992).

The first set of standards adopted by DEC are the standards applicable to model year 1993 and 1994 vehicles. This first set of standards was originally adopted by DEC on October 22, 1990. The second set of standards, and the set at issue in the *MVMA v. Jorling* action, are the Low Emission Vehicle (LEV) standards applicable to model years 1995 and beyond. This second set of standards was adopted on April 28, 1992 following the California Air Resource Board's (CARB) adoption of the LEV/Clean Fuels (CF) Program, and made effective on May 28, 1992. In the second rulemaking, DEC repealed and simultaneously readopted the standards for model years 1993 and 1994, with one change from those prior standards. The change in the 1993/1994 standards was the deletion of the medium duty truck standards. However, according to DEC, there were no other changes.

## II

Plaintiff New York State Automobile Dealers Association (NYSADA) is a not-for-profit association which represents approximately 1400 auto dealers in the State. Plaintiffs Syracuse Automobile Dealers Associations (SADA), Rochester Automobile Dealers Association (RADA), Niagara Frontier Automobile Dealers Association (NFADA), and Capital Region Automobile Dealers Association (CRADA) are all corporations organized by regional auto dealers for the purpose of, *inter alia*, advancing the interests of their members in judicial proceedings. In their complaint, plaintiffs allege that when CARB adopted the LEV/CF Program it modified and supplemented the model year 1994 standards, providing for, *inter alia*, alternative certification between pre-LEV and LEV standards. They argue that the Part 218 Regulations concerning the 1994 model year are therefore not identical to the California standards for that model year. Furthermore, they allege that the re-adoption of the standards for the 1994 model year on April 28, 1992 violates the two year leadtime provi-

sion of § 177. Finally, it is alleged in the complaint that plaintiffs will suffer immediate and irreparable injury as a direct result of the enforcement of the model year 1994 emission standards.

As alleged in the complaint, and explained in the affidavit of Norma Sharpe, Executive Vice–President of NYSADA, automobile manufacturers are currently demanding that plaintiffs' members place their orders for the 1994 model year. (*Complaint* at ¶ 17; *Sharpe* Affidavit at ¶ 14). Accordingly, plaintiffs' members must know whether to purchase vehicles which conform to the federal emission standards or the "California" standards adopted by DEC. (*Id.*). Therefore, they argue that the threat of harm is immediate. Since defendants have challenged plaintiffs' standing, however, it is important to understand how plaintiffs will allegedly be harmed.

New York is the only state which has adopted the California standards for 1994; therefore, model year 1994 vehicles sold in states other than California and New York need only comply with the less stringent federal standards. If the 1994 standards are enforced in New York, plaintiffs' members will only be permitted to sell California certified vehicles for registration in New York. (*Complaint* at ¶¶ 18–19). It is alleged in the complaint that because plaintiffs' members rely on their ability to trade with out-of-state dealers, the enforcement of the 1994 standards will preclude them from satisfying consumer demand for a particular vehicle by trading for such a vehicle with an out-of-state dealer. (*Id.*). Plaintiffs further allege that California certified vehicles are more expensive than federally certified vehicles, and therefore enforcement of the 1994 standards will place their members at a competitive disadvantage relative to out-of-state dealers. (*Id.* at ¶ 20). Finally, it is alleged in the complaint, upon information and belief, that manufacturers will not be producing all models of their vehicles to meet the California standards, and therefore enforcement of the 1994 standards will limit the vehicle models which plaintiffs' members will be able to offer. (*Id.* at ¶ 21). While plaintiffs' affidavits elaborate further on these three differ-

898

ent injuries alleged in the complaint, for the purposes of the instant motion, the court will focus solely on the allegations in the complaint.

## III

■ It is well settled that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests sought to be protected are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation from any of its members. *See New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1348 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). The complaint sufficiently establishes that the interests sought to be protected are germane to plaintiffs' purposes; and the state has not argued that the claims asserted require participation from any of the members of plaintiff associations. Nevertheless, plaintiffs must demonstrate that their members would otherwise have standing to sue in their own right.

■ Article III of the Constitution "gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 153, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990). At a constitutional minimum, to establish standing a plaintiff must first claim to have suffered an injury in fact—that is, "an invasion of a legally-protected interest which is (a) concrete and particularized [citations omitted]; and (b) actual or imminent, not conjectural or hypothetical [citations omitted]." *Lujan v. Defenders of Wildlife*, ⎯ U.S. ⎯⎯, ⎯⎯, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *see also Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Second, that injury must be fairly traceable to the defendants' allegedly illegal conduct. *See Simon v. Eastern Kentucky*

*Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). And third, it must be likely that the alleged injury will be redressed by a favorable outcome. *See id.*

■ In addition to the Article III requirements of standing, the Supreme Court has established further limits on the class of persons who may invoke the federal courts' decisional powers. These prudential considerations are directed at insuring against generalized grievances, that the plaintiffs are asserting their own rights and not those of a third party, and that the interest sought to be protected is arguably within the zone of interest protected by the statute in issue. *See Association of Data Processing Services v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101 (2d Cir. 1992).

■ While the "threshold inquiry into standing 'in no way depends on the merits of the plaintiff's contention that particular conduct is illegal' ", *Whitmore* 495 U.S. at 149, 110 S.Ct. at 1723 (quoting, *Warth* 422 U.S. at 500, 95 S.Ct. at 2206), it may hinge on the source of the claims asserted. "The actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . .'." *Warth* 422 U.S. at 500, 95 S.Ct. at 2206 (quoting, *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973)). Indeed, "the source of [plaintiffs'] claim[s] to relief assumes critical importance with respect to the prudential rules of standing. . . ." *Id.*

Since the court's jurisdiction over this matter is dependent upon plaintiffs' members' standing to assert the claims in the complaint, plaintiffs bear the burden of proving each of the elements of standing. In considering the standing question at this stage of the litigation, the court must assume the factual allegations in the complaint to be true. *See Lujan* ⎯ U.S. at ⎯⎯, 112 S.Ct. at 2136–2137. The court will consider each of the alleged injuries in turn and determine whether they are sufficient to meet the requirements of Article III.

## Article III

■ Plaintiffs allege that enforcement of the 1994 standards will effectively preclude them from trading with out-of-state dealers to satisfy consumer demand. (*Complaint* at ¶¶ 18–19.) They argue that this is an economic injury sufficient to constitute an injury-in-fact. The court disagrees.

Absent enforcement of the 1994 standards, a dealers' quest for a particular vehicle sought by a customer would not be limited by that particular vehicle's emission certification; therefore, plaintiffs' members would have a larger collection of vehicles with which to trade in order to satisfy consumer demand. Through enforcement of the 1994 standards, DEC will limit these searches to a sub-category of the larger collection of vehicles—specifically, California certified vehicles. It does not, however, directly preclude plaintiffs' members from trading with dealers outside of New York State. Rather, enforcement of the 1994 standards only restricts plaintiffs' members to trading for California certified vehicles. In fact, whether a New York dealer will be able to trade with an out-of-state dealer is as much a function of the out-of-state dealer's decision to carry California certified vehicles as it is a function of DEC's enforcement of the 1994 standards.

Nevertheless, even assuming that the practical effect of DEC's enforcement of the 1994 standards will be to preclude plaintiffs' members from trading with out-of-state dealers, that does not translate into an economic injury.[2] Plaintiffs have not alleged in the complaint how such a restriction causes them economic harm through lost profits, impaired competitive position, or otherwise. At oral argument, plaintiffs' counsel argued that by limiting the collection of vehicles with which dealers may trade, enforcement of the 1994 standards might lead to lost sales for dealers because it may take longer to locate a particular vehicle which satisfies a customer's specific demands. However, the threat of losing a sale due to consumer impatience is both conjectural and hypothetical, and therefore insufficient to constitute an injury-in-fact.[3]

Stripped down to its core, plaintiffs' central thesis is that enforcement of the 1994 standards will make it more difficult to satisfy consumer demand. While under the 1994 standards plaintiffs' members will be restricted to selling California certified vehicles for registration in New York, the market in which they sell these vehicles will be similarly restricted. As a result of DEC's enforcement of the 1994 standards, the New York registered new motor vehicle market will be defined as those vehicles which are certified to the California standards. Consequently, consumer demand within New York State will only be satisfied by California certified vehicles. Therefore, plaintiffs' members' ability to satisfy consumer demand will not be adversely affected by their inability to purchase federally certified vehicles from out-of-state dealers or auctions. Moreover, enforcement of the 1994 standards will not place plaintiffs' members at any competitive disadvantage with respect to out-of-state dealers insofar as the New York market is concerned. The effect of DEC's enforcement of the 1994 standards on plaintiffs' members is no different than its effect on out-of-state

2. The court recognizes that to establish standing a plaintiff need not allege an *economic* injury, *see Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); however, in the complaint plaintiffs claim that they will suffer an economic injury as a result of DEC's enforcement of the 1994 standards.

3. Moreover, the court questions whether such an alleged injury is fairly traceable to defendants' allegedly unlawful conduct. It is not clear that losing sales because of an inability to locate a particular vehicle within a certain time frame is a function of the 1994 standards. It cannot be gainsaid that sales are lost due to consumer impatience in all markets. Certainly, such a problem exists in the absence of DEC's enforcement of the 1994 standards—albeit to a different degree because the market within which plaintiffs' members are operating would not be restricted to California certified vehicles. However, the ability of a particular automobile dealer to satisfy an individual consumer's demands is as much a function of that dealer's business acumen and industry connections as it is a function of consumer demand itself. Therefore, even assuming that one of plaintiffs' members might lose a sale because of an inability to locate a particular vehicle quickly enough, it is not at all clear to the court that such a lost sale is fairly traceable to defendants' allegedly unlawful conduct.

dealers.[4] As far as the 1994 standards are concerned, an out-of-state dealer's ability to satisfy consumer demand within the New York market is no greater than any of plaintiffs' members. Therefore, even assuming that enforcement of the 1994 standards will preclude plaintiffs' members from trading with out-of-state dealers to satisfy consumer demand, that does not constitute a concrete and particularized injury.

Next, plaintiffs allege that California certified vehicles are more expensive than comparable federally certified vehicles. They allege that this inequality of price will result in a loss of bargaining power for New York dealers, and will further handicap them in their ability to trade with out-of-state dealers. (*Complaint* at ¶ 20). The court finds that this alleged harm is likewise insufficient to satisfy the injury-in-fact requirement of Article III.

Beyond the conclusory allegation in the complaint, plaintiffs have failed to explain exactly how the price differential will result in a loss of bargaining power for New York dealers. As explained above, the effect of DEC's enforcement of the 1994 standards will be to restrict the New York market to California certified vehicles. With respect to that market, all dealers, both New York dealers and out-of-state dealers, are in an equal bargaining position. Likewise, all dealers are in an equal bargaining position with respect to the market for federally certified vehicles. Therefore, the alleged price differential will not disadvantage New York dealers in their ability to trade with out-of-state dealers, and consequently, does not constitute an injury-in-fact.

Finally, plaintiffs allege, upon information and belief, that manufacturers will not be producing all models of their vehicles to meet the California standards, and therefore enforcement of the 1994 standards will limit the selection of vehicles which they will be able to offer. Once again, plaintiffs are claiming that their ability to satisfy consumer demand will be impaired. However, even assuming that a manufacturer's decision to produce only a limited number of models to meet the California standards constitutes an injury to plaintiffs' members, such an injury is not fairly traceable to the allegedly unlawful conduct.

The allegedly illegal conduct challenged in the complaint is DEC's failure to comply with the requirements of § 177 in adopting the 1994 standards. The line of causation between this allegedly unlawful conduct and a manufacturer's decision to produce a particular model vehicle to meet the California standards is attenuated at best. The harm alleged here results from the independent decisions of the vehicle manufacturers and not from defendants' allegedly unlawful conduct. Plaintiffs have not alleged that DEC's adoption of the 1994 standards was in any way causally connected to any manufacturer's decision to limit the number of models produced to meet the California standards.

The court recognizes that in the absence of the 1994 standards, plaintiffs members would not be limited to selling California certified vehicles for registration in New York. However, the harm alleged in the complaint is not that enforcement of the 1994 standards will limit plaintiffs' members to selling California certified vehicles. Rather, plaintiffs allege that the manufacturers will not be producing all models to meet the California standards, and that by enforcing the 1994 standards DEC is restricting plaintiffs' members to selling only that class of vehicles which the manufacturers decide to produce according to the California standards. While a manufacturer may consider the enforcement of the 1994 standards in New York as a factor in determining which models to produce according to the California standards, such a deci-

---

4. For that matter, the effect of DEC's enforcement of the 1994 standards will have an identical effect on consumers. Enforcement will preclude New York consumers' from registering vehicles which are only certified to the federal standards, whether those vehicles are purchased from one of plaintiffs' member dealers or an out-of-state dealer. In *Lujan* the Supreme Court explained that to be particularized "the injury must affect the plaintiff in a personal and individual way." *Lujan* —— U.S. at —— n. 1, 112 S.Ct. at 2136 n. 1. At oral argument, plaintiffs were unable to distinguish their members' injury from the generalized burden that enforcement of the 1994 standards will impose on consumers.

sion is certainly not fairly traceable to defendants' allegedly unlawful conduct.

## Prudential Limits

■ Not only have plaintiffs failed to meet the Article III requirements of standing, but even assuming they could satisfy those requirements, their claims fail upon consideration of the prudential limits on federal court jurisdiction. As the Supreme Court explained in *Warth*, with respect to the prudential rules of standing the essential question is "whether the constitutional or statutory provisions on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth* 422 U.S. at 500, 95 S.Ct. at 2206. Defendants argue that § 177 does not entitle plaintiffs to the judicial relief which they seek. The court agrees.

Plaintiffs' complaint is based upon the Clean Air Act, specifically § 177. However, whether defendants violated § 177 is immaterial to the question of whether that statute grants plaintiffs the right to the relief sought in the complaint.[5] Insofar as it is relevant here, § 177 of the Clean Air Act permits a state such as New York to adopt motor vehicle emission standards only if (a) such standards are identical to California's standards for that model year, and (b) such standards are adopted two years prior to the commencement of the model year. The direct consequence to plaintiffs of the enforcement of the 1994 standards is the inability of plaintiffs' members to sell the less expensive federally certified vehicles for registration in New York. However, even assuming that defendants' conduct would cause harm to plaintiffs' members, they do not have any right under the Constitution or any statute to be free from such harm.

Plaintiffs' counsel argued that by preempting the field of motor vehicle emission regulation, *see* 42 U.S.C. § 7543 (§ 209 of the Act), Congress expressed its intention to protect interstate commerce from the burdens of inconsistent and overlapping state regulations. Therefore, plaintiffs argue, § 209 protects dealers, among others, from having to purchase and sell vehicles which are certified to different standards than those sold by dealers in neighboring states with whom they trade. Plaintiffs contend that in enacting § 177 Congress only created a limited exception to the preemptive force of § 209; and that if a state fails to comply with the narrow exception contained in § 177, then that state has violated the general preemptive provision of § 209 and invaded a legally protected interest.

Although § 209 was clearly intended to protect interstate commerce from the burdens of different state standards,[6] and assuming *arguendo* that when it was enacted § 209 protected plaintiffs from the sort of "injury" of which they now complain, § 177 was an amendment to the Clean Air Act and must be treated as such. In amending the Act in 1977, Congress determined that while different state standards may impose somewhat of a burden on interstate commerce, the protection of the environment was of comparable importance to the protection of interstate commerce.[7] Therefore, to balance these two important interests Congress enacted § 177.

5. The Supreme Court has held that the right to have the government act in accordance with the law is not sufficient, by itself, to confer standing to sue in federal court. *See e.g. Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Recognizing such an abstract injury as sufficient to confer standing would open the jurisdiction of the federal courts to generalized grievances and would defeat the "case or controversy" requirement of Article III. *Id.* Therefore, plaintiffs must do more than allege that defendants violated § 177.

6. *See* H.R.Rep. No. 728, 90th Cong., 1st Sess. 1967, U.S.Code Cong. & Admin.News 1967, p.

1938 (preemption necessary to "prevent a chaotic situation from developing in interstate commerce in new motor vehicles."); S.Rep. No. 403, 90th Cong., 1st Sess.1967 (multiple state standards would result in "economic disruption" and increased costs to consumers).

7. *See* H.R.Rep. No. 294, 95th Cong., 1st Sess. 1977 (Congress still concerned that 50 different state emission standards would unduly burden interstate commerce. "On the other hand, the Committee is concerned that this preemption (Section 209(a) of the Act) now interferes with the legitimate police powers of States, [and] prevents effective protection of public health ...").

In doing so, Congress decided to permit state regulation of motor vehicle emissions at the expense of somewhat of a burden on interstate commerce so long as the states provided the manufacturers with two years leadtime, and did not force manufacturers to produce vehicles different than they were producing for California.[8] There is no suggestion in the 1977 Amendments to the Clean Air Act, or any expression in the supporting legislative history, of Congressional concern that granting states the authority to adopt California's new motor vehicle emission standards would impose a burden on automobile dealers. Indeed, when Congress amended § 177 in 1990, it sought to "make plain that states exercising this option may not, in such adoption and enforcement, create a 'third vehicle' that is not a California vehicle or a 49–state Federal vehicle, *because of the burden it would place on motor vehicle manufacturers.*" 136 Cong.Rec. S16895–1, S16939 (daily ed. October 27, 1990) (statement of Senators Chaffee and Baucus) [emphasis added]. Therefore, it is apparent that Congress' primary concern in restricting state authority under § 177 was to protect manufacturers from the burden of multiple state standards.

However, not only was Congress primarily concerned with motor vehicle manufacturers, but it implicitly accepted what plaintiffs now argue is a burden on interstate commerce. The harm for which plaintiffs' seek redress is the inherent consequence of Congress' passage of § 177. Indeed, plaintiffs' counsel conceded at oral argument that plaintiffs' members would suffer the same harm regardless of whether New York complied with the requirements of § 177 in adopting the 1994 standards. By permitting states like New York to adopt California's new vehicle emission standards, Congress implicitly accepted the consequences of that action which were that automobile dealers in such adopting states would be limited to selling California certified vehicles and consumers in such states would be limited to registering only those vehicles. Consequently, even assum-

ing that Congress sought to protect automobile dealers' interests in selling federally certified vehicles by enacting § 209, by enacting § 177 Congress effectively sacrificed that interest in favor of the legitimate police powers of states. Therefore, the court concludes that the Clean Air Act does not entitle plaintiffs' members to the judicial relief which they seek.

## CONCLUSION

Having considered the papers submitted and the arguments of counsel, the court finds that plaintiffs' members have not satisfied the Constitutional requirements of standing implicit in Article III. However, even assuming that plaintiffs' members could satisfy the requirements of Article III, neither § 209 nor § 177 of the Clean Air Act can be read as granting plaintiffs' members a right to the judicial relief which they seek. Based upon this finding, it is hereby

**ORDERED,** that plaintiffs' motion pursuant to Fed.R.Civ.P. 56 is denied in its entirety, and it is further

**ORDERED,** that defendants' motion pursuant to Fed.R.Civ.P. 12(b)(1) is granted in its entirety and that the complaint is dismissed. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

## DECISION & ORDER ON RECONSIDERATION

On July 10, 1993 the court issued a Memorandum–Decision & Order on plaintiffs' motion for summary judgment and defendants' cross-motion to dismiss the complaint in the above captioned matter. In its ruling the court found that plaintiffs lacked standing to assert the claims in the complaint, and therefore that the court lacked jurisdiction over the action. Consequently, plaintiffs' motion for summary judgment was denied in its entirety and defendants' motion to dismiss was granted. On July 16, 1993 the Clerk entered judgment dismissing the complaint

---

**8.** *See* 42 U.S.C. § 7507 (West Supp.1992); *see also* H.R.Rep. 95–294, 95th Cong., 1st Sess.1977 ("This new State authority should not place an undue burden on vehicle manufacturers who will be required, in any event, to produce vehicles meeting the California standards for sale in California.")

in accordance with the July 10, 1993 Memorandum–Decision & Order. On July 26, 1993 plaintiffs filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for reconsideration of the court's July 10 ruling. Defendants filed their response to this motion on August 13, 1993. This order constitutes the court's ruling on the motion for reconsideration. Familiarity with the court's prior ruling is assumed.

■ A motion for reconsideration will only be granted where the movant demonstrates to the court that it has overlooked factual matters or controlling precedent which would have materially altered its prior ruling. *See Motor Vehicle Manufacturer's Association v. Jorling*, 831 F.Supp. 57 (N.D.N.Y.1993) (McAvoy, C.J.). In support of their motion, plaintiffs have submitted affidavits from their members which lend support to the allegations in the complaint concerning the alleged injury threatened by defendants' actions. However, the court's ruling was, *inter alia,* that the harm alleged in the complaint did not constitute an "injury-in-fact" sufficient to confer standing under Article III of the United States Constitution. The additional affidavits from plaintiffs' members would not have materially altered that central conclusion. In addition to submitting these affidavits, plaintiffs argue that the court misapprehended the governing principles of standing. However, they have presented no controlling precedent which would have persuaded the court to arrive at a conclusion any different than the one discussed in the July 10, 1993 decision. The instant motion simply restates many of the arguments which the court considered in arriving at that decision.

Therefore, since plaintiffs have failed to meet their burden on a motion for reconsideration, it is hereby

**ORDERED,** that the instant motion pursuant to Fed.R.Civ.P. 59(e) is denied in its entirety.